**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

JOHANN M. CUTTI,                                    **COMPLAINT AND**
                                                    **JURY DEMAND**
                         **Plaintiff,**
                 -against-                           **Case No. 1:24-cv-5261**

**SELIP & STYLIANOU, LLP**
**MIDLAND CREDIT MANAGEMENT, INC.**


                         **Defendants.**
-----------------------------------------------------------------X


Plaintiff Johann M. Cutti, by and through his attorneys at Manhattan Legal Services, for

his Complaint against Defendants Selip & Stylianou, LLP and Midland Credit Management,

Inc., alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Johann Cutti (hereinafter "Plaintiff") brings suit against Defendants Selip

& Stylianou, LLP  and Midland Credit Management, Inc. for their violations of the Fair Debt

Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, New York General Business Law § 349 *et*

*seq.*, and against Defendant Selip & Stylianou, LLP for violations of N.Y. Judiciary Law 487.

Plaintiff also brings a common law claim for negligence *per se* against both Defendants.

2.      In July 2023, Defendants began garnishing Plaintiff's wages pursuant to a 2021

default judgment they had obtained against "Luis E. Cutti", a name Plaintiff had not used since

2013, when he legally changed his name to Johann M. Cutti. Defendants obtained the default

judgment after serving the complaint at an address Plaintiff had never lived at and had no

connection to. Defendants continued to collect on the debt even after Plaintiff informed them that

they were garnishing the wrong person and provided them with proof of his name change, that he

lived in Manhattan at the time the complaint was served in Queens, that his physical description did not match the description of the person served per the affidavit of service, and that he had moved to Manhattan two years before the credit card used to incur the debt was allegedly mailed to an address in Queens. Despite receiving clear evidence that Plaintiff was not the named judgment debtor, did not owe the debt, and that the default judgment was obtained via improper service, Defendants continued to garnish Plaintiff's wages, opposed his order to show cause to vacate the default judgment, and failed to return all of the garnished funds for almost three months after they acknowledged that Plaintiff did not owe the debt, and almost two months after the lower court vacated the default judgment.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District and Defendants regularly conduct business in the District.

## PARTIES

6.      Plaintiff Johann M. Cutti is an individual currently residing in New York County, New York.

7.      Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

8.      Defendant Selip & Stylianou, LLP ("Selip") is a limited liability partnership organized under the laws of the State of New York. Its principal place of business is 199 Crossways Park Drive, P.O. Box 9004, Woodbury, NY 11797.

9.      Selip is a debt collection law firm and is registered as a debt collection agency with the New York City Department of Consumer and Worker Protection ("DCWP") under license number 2045186-DCA.

10.      Selip files thousands of consumer credit transaction lawsuits in New York State annually to collect consumer debts owed to another, and also executes on judgments obtained in those lawsuits, including through wage garnishments.

11.      Upon information and belief, Selip regularly collects consumer debts owed or due another through debt collection letters sent by mail.

12.      Upon information and belief, the collection of consumer debts is Selip's principal purpose.

13.      Selip is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14.      Defendant Midland Credit Management, Inc. (hereinafter "Midland") is a foreign business corporation organized under Section 1304 of the New York Business Corporation. Midland maintains its principal place of business at 350 Camino de la Reina, Suite 300, San Diego, CA 92108.

15.      Midland is a debt collection agency registered with DCWP under the license number 1140603-DCA.

16.      Upon information and belief, Midland is a debt buyer which purchases consumer debt from original creditors post-default.

17.     Midland files thousands of actions to collect consumer debt in New York courts annually.

18.     Upon information and belief, Midland regularly uses the mail in its collection of consumer debt.

19.     Upon information and belief, Midland's principal purpose is the collection of consumer debt.

20.     Midland is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## STATUTORY FRAMEWORK

### The Fair Debt Collection Practices Act

21.     Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

22.     The FDCPA applies to consumer debt, which is any obligation or alleged obligation to pay money "arising out of a transaction" entered into "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

23.     The FDCPA imposes a duty of care on debt collectors when collecting debts from consumers.

24.     Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

25.     Prohibited conduct in violation of this section includes, but is not limited to:

    a.     "The false representation or implication of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

b.     "The threat to take any legal action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5)

c.     "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false."  15 U.S.C. § 1692e(8).

d.     "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

e.     "The failure to disclose in the initial written communication with the consumer, a and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. Sec. 1692e(11)"

26.    A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt", including but not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

27.    In addition, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.

28.    If a consumer disputes the validity of the debts in writing within thirty days of the debt collector's initial communication with the consumer regarding the collection of the debt, the debt collector must "cease collection of the debt, or any disputed portion thereof" until the debt collector obtains and sends to the consumer such verification. 15 U.S.C. § 1692g(b).

29.    An individual may recover $1,000 in statutory damages from a debt collector who violates the above provisions of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

30.     An individual may also recover any actual damages sustained as a result of a debt collector's violations of the FDCPA. 15 U.S.C. § 1692k(a)(1).

31.      In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court.  15 USC § 1692k(a)(3).

### New York General Business Law § 349

32.     New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law § 349(a).

33.     N.Y. Gen. Bus. Law § 349 imposes a duty of care to consumers.

34.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349.

35.     The damages award may be increased to an amount not to exceed three times the actual damages up to $1,000 if a court finds the Defendant willfully or knowingly violated this section. N.Y. Gen. Bus. Law § 349(h).

### New York General Business Law §601

36.     The New York State Fair Debt Collection Practices Act, codified as General Business Law  ("GBL") § 601, prohibits debt collectors from claiming or attempting to enforce a right which they have knowledge or reason to know does not exist.

37.     GBL § 601 imposes a duty of care on debt collectors when collecting debts from consumers.

### New York Judiciary Law § 487

38.     New York Judiciary Law § 487 provides a private cause of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487.

39.      As interpreted by the courts, the act of deceit or collusion must be extreme or egregious to violate N.Y. Jud. Law § 487. A single egregious act or a broad pattern of deceptive filings can establish a violation of the section.

40.     Willful delays of a client's lawsuit for an attorney's own gain also violates N.Y. Jud. Law §487.

41.     For a party to be eligible for relief under Judiciary Law §487, the party must establish the deceitful conduct was the proximate cause of the harm experienced.

42.     Any such attorney or counselor who violates the statute "forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. Law § 487. Forms of harm which are entitled to relief under the statute include the costs of defending a frivolous action.

**New York Civil Practice Law and Rules §§ 5230 and 5231**

43.     New York Civil Practice Law and Rules (C.P.LR.) § 5230 provides that an execution on a money judgment may be issued by the court in which the judgment was first docketed, by the clerk of the court, or by the attorney for the judgment creditor as an officer of the court.

44.     C.P.L.R. § 5230 further provides that "[a]n execution shall direct that only the property in which a named judgment debtor…has an interest…be levied upon or sold thereunder and shall specify the last known address of that judgment debtor."

45.     C.P.L.R. §5231(d) requires judgment creditors to serve a copy of income executions on judgment debtors prior to serving them on the judgment debtor's employer.

46.     C.P.L.R. 5231(d) gives judgment debtors a grace period to contact the creditor and make payment arrangements to avoid the disclosure of the judgment to their employer.

## STATEMENT OF FACTS

### Plaintiff's bankruptcy and name change

47.     Plaintiff Johann M. Cutti (hereinafter "Plaintiff") is a low wage worker who resides and works in New York County.

48.     Plaintiff has lived in Upper Manhattan since 2014.

49.     In 2010, Plaintiff filed for bankruptcy after experiencing an extended period of financial hardship.

50.     Plaintiff viewed the bankruptcy as a chance to get a fresh start,

51.     Since the bankruptcy, Plaintiff has worked hard to repair his credit and get back on a sound financial footing.

52.     In 2013, Plaintiff legally changed his name from Luis E. Cutti to Johann M. Cutti, in part because his uncle, also named Luis Cutti, had bad credit and Plaintiff did not want to be confused with him.

53.     A copy of the name change was filed with Bankruptcy Court.

54.     Plaintiff also published his name change in a Queens newspaper over a period of three months, as was legally required at that time, and ceased using the name Luis E. Cutti.

55.     In 2014, Plaintiff moved to Manhattan and has lived there ever since.

**The Civil Court Action**

56.    On June 11, 2021, Selip filed a debt collection action in Queens County Civil Court on behalf of its client Midland against Luis E. Cutti under Index number CV-015552-21/QU.  The Summons and Complaint identified it as a consumer credit transaction.

57.    The Complaint was signed and verified by Estathious Georgiou, an attorney at Selip.

58.    The Complaint alleged that Midland had purchased the debt from the original creditor, Capital One, and that Capital One had sent a credit card offer to Luis E. Cutti in May 2016, which Luis E. Cutti accepted by using the card.

59.    Upon information and belief, the credit card offer was sent to an address in Queens, although Plaintiff had been living in Manhattan since 2014.

60.    Acting on Midland's behalf, Selip submitted an application to the court requesting a default judgment after the named defendant, Luis E. Cutti, failed to answer the Complaint.

61.    Selip, in its request for a default judgment, submitted documentation from the original creditor indicating that the subject account had been opened in the name of Luis Cutti in 2016, three years after Plaintiff had changed his name.

62.    Selip, by one of its attorneys Joseph Ranaldo, affirmed under the penalties of perjury that Luis E. Cutti had been served at his last known address pursuant to the affidavit of service.

63.    Selip filed a copy of the affidavit of service with the court which stated that a process server named Moaad S. Jabir personally served Luis E. Cutti at 9036 Francis Lewis Blvd PH, Queens Village, NY on October 4, 2021.

64.     Plaintiff has never lived at, and has no connection to, the service address; however, upon information and belief, Plaintiff's uncle, Luis M. Cutti, lived there at one time.

65.     The process server's affidavit described Luis E. Cutti as 5'9"-6'0" tall; with grey hair; brown skin; between 161 and 180 pounds; between 50 and 60 years old; and wearing glasses.

66.     Much of the information contained in the affidavit of service is inaccurate as to Plaintiff.

67.     At the time of service, Plaintiff lived at an address in Manhattan, not in Queens; he is 5'6" tall, not 5'9" to 6'0"; his hair is dark, not grey; he does not wear glasses; and his name is Johann M. Cutti, not Luis E. Cutti.

68.     Plaintiff's New York State driver's license, issued less than one year before the date of service, confirms his name, his Manhattan address, and that he does not wear glasses. The photo on his license shows that his hair is dark, not grey.

69.     On December 7, 2021, Queens Civil Court granted Defendants' application and entered a default judgment against Luis E. Cutti on December 7, 2021 in the amount of $4,085.35.

70.     On March 10, 2023, Selip sent a notice of entry of the default judgment, along with a debt collection letter signed by one of its attorneys, Alicia Bursky-Stillman, to Luis E. Cutti at 9036 Francis Lewis Boulevard, Queens Village, NY. Again, Plaintiff had never lived at and had no connection to this address.

**The Garnishment**

71.     Upon information and belief, in or around June 2023, Selip issued an income execution naming Luis E. Cutti as the judgment debtor and listing his address as 9036 Francis Lewis Boulevard, Queens Village, NY.

72.     Upon information and belief, Defendants then provided a copy of the income execution to Marshal Bienstock and asked him to serve it on Plaintiff's employer, although the name and address on the income execution did not match Plaintiff's name and address.

73.     Plaintiff did not receive a copy of the income execution prior to its service on his employer.

74.     Plaintiff's employer garnished Plaintiff's paycheck pursuant to the income execution starting with his paycheck dated July 14, 2023.

75.     From July 14, 2023 through February 24, 2024, Defendants used the default judgment against Luis E. Cutti to garnished $2168.59 from Plaintiff Johann M. Cutti's paycheck for work performed in New York County.

76.     When Plaintiff received his paycheck dated July 14, 2023, the pay amount was less than he expected.

77.     When Plaintiff examined his paystub, he discovered that $61.05 had been taken from his paycheck pursuant to a garnishment.

78.     As far as Plaintiff knew, the only unpaid debt he had after his bankruptcy was a tax debt.

79.     Plaintiff had been working with an attorney at the Legal Aid Society ("LAS") to try to settle that tax debt and the LAS attorney had told him to contact him in the event of a garnishment.

80.    Plaintiff called the LAS attorney, but was told the attorney was no longer employed there and was unable to reach anyone else who could help him.

81.    On July 20, 2023, Plaintiff made multiple phone calls to ADP, the company his employer contracted with to do its payroll to ask questions about the garnishment, but was unable to get through to them until after calling his employer's Human Resources Department ("HR") to get the direct line to ADP's garnishment and levies department. Plaintiff asked ADP for more information about the garnishment, and on July 21, 2023, ADP emailed Plaintiff only the first page of the income execution, which was marked "received" on June 29, 2023.

82.    Plaintiff noticed that the name of the judgment debtor on the income execution was Luis E. Cutti, which confirmed his belief that the garnishment must relate to his tax debt, since all the other debts he had incurred prior to changing his name had been discharged in his bankruptcy.

83.    As the months passed, Plaintiff continued to reach out to LAS and leave messages asking for help, but no one called him back.

84.    He did not think there was anything he could do on his own to stop the garnishment.

**The Impact of the Garnishment**

85.    Plaintiff is a part-time low-wage worker who struggled to get by on his weekly wages even before the garnishment.

86.    After the garnishment, Plaintiff worried that he would not be able to pay his rent and other expenses with his reduced wages.

87.    All of the stress and anxiety he had experienced during the 2010 bankruptcy, and the financial struggles he went through leading up to it, came back to him.

88.     Plaintiff was upset and disappointed because he felt as if all the sacrifices and hard work he had put into re-establishing his financial stability had been for nothing.

89.     Plaintiff was also angry that he had gotten no prior notice of the garnishment before the Marshal served the income execution on his employer.

90.     Plaintiff had planned to save money to start his own small business to get back on his feet financially, but after the garnishment, he felt this was impossible.

91.     Plaintiff shares an apartment with his brother and they split the rent.

92.     Plaintiff's brother is retired and lives on a fixed income, and although Plaintiff is close to him, the two brothers live independently.

93.     Plaintiff dreaded having to disclose his financial situation to his brother but when he realized he could not pay his share of the rent, he was forced to do so.

94.     Plaintiff was ashamed and embarrassed that he had to ask his brother to pay the full rent until the garnishment ended or Plaintiff found a way to earn extra money.

95.     Plaintiff's brother agreed to pay the full rent, but it changed their relationship; his brother became very critical of Plaintiff and his decisions when before, he wouldn't have considered it any of his business.

96.     On the rare occasions when Plaintiff would go out for coffee simply to get out of the house, Plaintiff's brother criticized him and asked why he was spending money and why he couldn't make coffee at home.

97.     After his brother's comments, Plaintiff stopped going out at all.

98.     The tension between them continued as the months passed and Plaintiff was still unable to pay his share of the rent.

99.     Plaintiff barely left the house for the seven months the garnishment was in place, aside from going to work.

100.    He no longer went out to socialize with friends and family because he could not afford to.

101.    Plaintiff even stopped going to his sister's home to celebrate the holidays with the rest of his family because he could not enjoy it with the garnishment hanging over him.

102.    He felt increasingly isolated and had trouble sleeping because of the anxiety caused by the garnishment.

**Plaintiff's contacts with Defendants relating to the garnishment**

103.    When Plaintiff did his taxes in January 2024, he was shocked to see that over $1700 had been deducted from his paycheck through the garnishment.

104.    On February 1, 2024, Plaintiff called ADP to find out if there was a way to stop or reduce the garnishment based on his financial hardship.

105.    ADP referred Plaintiff to the marshal who served the income execution.

106.    When Plaintiff called the marshal's office, he was told to call Selip.

107.    Plaintiff called Selip and asked how much longer the garnishment would continue and how much was still owed on the debt.

108.    During the conversation, Plaintiff learned that he was not being garnished for a tax debt, as he had believed, but for an alleged credit card debt.

109.    Plaintiff told Selip that that Defendants were garnishing the wrong person; that he had never been served with any notices or court papers relating to the debt; that he had filed for bankruptcy in 2010 and all his debts were discharged; that he had legally changed his name to Johann Cutti in 2013; that he had never lived at the address in Queens where Selip said it had

served the Complaint; and during the time when Selip claimed to have sent debt collection notices and a notice of the entry of the default judgment to him at addresses in Queens, he had been living in Manhattan.

110.    Selip said that the social security number on their account matched Plaintiff's social security number, so it must be his debt.

111.    When Plaintiff continued to insist he did not owe the debt, Selip told him the garnishment would continue and the line went dead.

112.    At no point did Selip inform Plaintiff that he had a right to seek verification of the debt.

113.    On February 2, 2024, Selip sent Plaintiff an accounting of the amount garnished from his paycheck, which identified Selip as a debt collector, but again, did not inform Plaintiff of his right to seek verification of the debt.

### Plaintiff's requests for verification of the debt and his attempt to vacate the default judgment

114.    After Plaintiff's own attempts to stop the garnishment failed, Plaintiff's brother found out about a different legal services organization that might be able to help Plaintiff.

115.    Plaintiff contacted Manhattan Legal Services in mid-February 2024.

116.    After he consulted with Manhattan Legal Services, Plaintiff learned for the first time that he had a right to ask for verification of the debt and that it was possible to ask for the default judgment to be vacated.

117.    Plaintiff promptly sent a letter to Selip by certified mail on February 14, 2024, at a cost of approximately $5.08, disputing owing the judgment and asking for verification of the debt.

118.    Selip replied by letter dated February 21, 2024, signed by attorney Rolando C. Delacruz, identifying itself as a debt collector, but did not include any language stating that it was collecting a debt or that the information obtained would be used to collect a debt.

119.    In the letter, Selip characterized Plaintiff's verification letter as an identity theft report and requested that he provide documents to support a claim of identity theft, including completing a certification of identity theft.

120.    Plaintiff, however, since he was not the named judgment debtor, believed it was a case of mistaken identity, so he had not filed a police report or an identity theft affidavit.

121.    Selip provided a bill of sale and affidavits from Midland and Capital One stating that Midland had purchased a pool of accounts from Capital One; however, neither the bill of sale nor the affidavits identified the individual accounts sold.

122.    Because none of the documents indicated that Midland had purchased any account in Plaintiff's name or the name of Luis E. Cutti, Defendants failed to verify the debt.

123.    Upon information and belief, although at least seven Selip attorneys were involved in collecting the debt allegedly owed by Luis E. Cutti, none had consulted available records which would have shown that Plaintiff had changed his name from Luis E. Cutti to Johann M. Cutti years before the account allegedly opened.

124.    On February 22, 2024, Plaintiff filed an order to show cause to stop the garnishment and vacate the default judgment against Luis E. Cutti that Selip had used to garnish his wages based on lack of personal jurisdiction because Defendants had not served him at his actual residence.

125.    In support of his order to show cause, Plaintiff attached a copy of his driver's license, which was issued in 2020. His driver's license showed his Manhattan address and also

that his physical appearance, including height, hair color, and lack of glasses, did not match the

individual purportedly served with the Complaint in 2021. Plaintiff also attached a printout from

his landlord showing that he has lived in his Manhattan apartment since 2014, approximately

seven years before the papers in the court case were served at an address in Queens.

126.    On February 23, 2024, Plaintiff served a copy of the signed order staying

garnishment on Marshal Bienstock by fax at a cost of $4.90.

127.    On February 27, 2024, Plaintiff served a signed copy of the order to show cause,

along with his affidavit and exhibits in support of the order to show cause, on Defendants by

certified mail at a cost of $10.40.

128.    Plaintiff also provided a copy of the order to his employer.

129.    On March 25, 2024, Christopher Pavlik, another attorney employed by Selip,

opposed Plaintiff's order to show cause to vacate the baseless default judgment, despite receiving

clear evidence that Plaintiff had a different name than the judgment debtor; did not live at the

service address; and did not fit the description of the person allegedly served.

130.    Selip attached a summons and complaint to their opposition from a case that

Midland apparently filed against Luis E. Cutti in 2020 under index number 17650-20/QU which

was signed by David Cohen, who, upon information and belief, is a partner at Selip.

131.     Selip apparently mistook it for the summons and complaint in the 2021 case in

which Plaintiff had filed his order to show cause to vacate the default judgment.

132.    On March 29, 2024, the return date of Plaintiff's order to show cause, Selip

requested an adjournment to do a fraud investigation, despite already having received ample

proof that Plaintiff had a different name from the judgment debtor; did not live at the address the

Complaint had been served; did not match the description of the person served; and could not

have incurred the underlying debt, since he was living in Manhattan at the time the credit card at issue was purportedly mailed to an address in Queens and the card was not issued in his legal name.

133.    Plaintiff opposed Selip's request because he believed he had presented enough evidence for the judgment to be vacated and he did not want to delay the case further, since he was suffering financially and needed his garnished wages back.

134.    Upon information and belief, the civil court judge took the order to show cause on submission over Selip's objection.

135.    On April 4, 2024, only four business days after the court date when Selip had requested an adjournment, and without Plaintiff submitting any additional documents or information to Defendants, Selip served its own motion on behalf of Midland seeking to vacate the judgment on the grounds that the account had been fraudulently opened and the debt did not belong to Plaintiff.

136.    The motion was accompanied by a cover letter stating that Selip was closing the Luis E. Cutti file and returning it to Midland.

137.    The motion did not mention that Plaintiff's order to show cause to vacate the judgment for lack of personal jurisdiction had been submitted to the court and was still pending.

138.    In fact, the affirmation from Arslan Akhtar, yet another attorney at Selip, affirmed under penalty of perjury that no prior application to vacate the default judgment and dismiss the action had been made.

139.    Notably, the proposed order attached to Defendants' motion did not indicate that the case was being discontinued with prejudice or mention that Midland had determined the account was fraudulent.

140.    Upon information and belief, Defendants had not received any new information relating to the case between March 29, 2024, when Defendants opposed Plaintiff's order to show cause, and April 4, 2024, when Defendants served their own motion to vacate the judgment.

141.    In his partial opposition to Defendants' motion, Plaintiff pointed out that his order to show cause was still pending and involved personal jurisdiction, which was a threshold issue.

142.    Plaintiff also noted that Selip could easily have reached out to him to do a stipulation to discontinue without the need for an additional court date, as well as that Defendants' proposed order did not discontinue the action with prejudice, although Midland acknowledged it was not his debt; and did not contain any provision requiring Midland to return the garnished funds or a timeline to do so.

143.    Midland's motion was returnable on May 3, 2024, a day that Plaintiff had already asked to have to take off as a vacation day, and now had to use to appear in court.

144.    On the return date, Plaintiff did not get a chance to speak to the judge, only the judge's court attorney, who said that the proposed order gave Plaintiff everything he wanted and would be so-ordered.

145.    At the court appearance, Plaintiff asked Selip to issue a check in his legal name for the balance of the funds garnished from his paycheck, because otherwise he would not be able to cash it.

146.    In his April 24, 2024 paycheck, Plaintiff's employer had returned only $220.58 of the more than $2100 that had been garnished, but upon information and belief, withheld taxes on the amount, so Plaintiff was effectively double taxed.

147.    After the court date, Plaintiff contacted Selip to ask when he would receive the balance of the monies that had been garnished from his paychecks and was told he would receive a check shortly.

148.    When no check arrived, Plaintiff called Selip week after week and each time Selip told him he would receive it imminently.

149.    Plaintiff did not receive a check for the balance of the remaining garnished funds, totaling $1915.19, until June 6, 2024.

150.    Although Defendants had garnished wages from paychecks bearing Plaintiff's name, they issued the check in the name of Luis E. Cutti, even though Plaintiff had informed them he could not cash a check that was not in his legal name.

151.    Plaintiff contacted Selip to request that the check be reissued in his own name, as Selip had previously agreed to do.

152.    When Selip still failed to issue a new check, Plaintiff turned to Manhattan Legal Services for assistance.

153.    The attorney he consulted with at Manhattan Legal Services contacted Selip on June 10, 2024 to request the reissuance of the check in Plaintiff's legal name.

154.    Plaintiff received the replacement check from Selip on June 24, 2024, almost eight weeks after the judgment was vacated and nearly three months after Midland determined that Plaintiff did not owe the alleged debt.

## Defendants' pattern and practice

155.    According to New York State's online E-court records, Selip filed over 25,000 debt collection lawsuits in New York State in 2021 alone. Upon information and belief, Selip also files debt collection lawsuits in New Jersey.

156.    Upon information and belief, in addition to filing lawsuits, Selip engages in other debt collection activity, including mailing debt collection letters to consumers and collecting on putative judgments through income executions, garnishments, levies, and restraints.

157.    Upon information and belief, based on its letterhead, Selip employs fewer than twenty attorneys.

158.    The high volume of collection complaints filed by Selip in itself suggests that Selip has a broad pattern and practice of filing collection complaints and enforcing judgments without meaningful attorney review.

159.    Indeed, at least seven different attorneys signed legal documents and communications related to the collection of the putative debt that is the subject of this action, none of whom verified Plaintiff's legal name or correct address prior to the service of legal documents and notices, including an income execution.

160.    Selip has been sued repeatedly for violations of the FDCPA and N.Y. Jud. Law § 487.

161.    Although the circumstances of the individual cases differ slightly, the facts alleged establish that Selip has a pattern and practice of robo-signing legal documents related to debt collection, failing to make a reasonable review prior to collecting debts, and unduly prolonging baseless litigation.

162.    Defendants have been sued repeatedly for signing and issuing income executions and restraining notices to collect on judgments for debts that are not owed by the consumer, and for unduly prolonging litigation after receiving proof that service was improper or the debt is not owed by the consumer. *See, e.g., Wilson v. Selip & Stylianou, LLP, et al.*, Case No. 1:24-cv-04108 (SDNY); *Wesley v. Selip & Stylianou, LLP, et al.* Case No. 1:23-cv-06049 (EDNY);

*David Ruiz v. Selip & Stylianou, LLP*, Case No. 1:21-cv-00324 (EDNY); *Lewis v. Selip & Stylianou, LLP*, Case No. 1:20-cv-07301 (SDNY). Such actions evidence a broad practice of deceit by signing legal documents without meaningful review, signing legal documents that Selip knows have no legal basis, and/or unduly prolonging litigation that Selip knows is baseless.

163.    Manhattan Legal Services has represented multiple defendants in debt collection cases where Selip has routinely opposed motions to dismiss and/or orders to show cause to vacate judgments, particularly those seeking a traverse hearing, using boilerplate and inapplicable legal arguments.

164.    In one case, *Midland Funding LLC v. Maura Hernandez*, Index No. CV-11074-11/NY, Selip restrained the defendant's bank account and refused to release her funds after she won an appeal unless she agreed to sign a stipulation including a release of any claims she might have against them.

165.    In another case, *Midland Credit Management, Inc. v. Martha Gil*, Index No. CV-00828-21/NY, Selip refused to discontinue a case after it was informed that the process server's description of the defendant misdescribed the defendant's height by six to nine inches and her weight by over forty to fifty-five pounds, forcing the defendant to file a motion to dismiss.

166.    Upon information and belief, these cases are not anomalies, but representative of Selip's normal pattern and practice in collecting debts.

167.    Upon information and belief, Selip relies on deceptive statements in affidavits of service and affirmations submitted to the court in debt collection cases brought against consumers to obtain default judgments to which its clients are not entitled, either because the debt was not owed,  or service was improper; represents to consumers that the default judgment is valid and they owe the debt despite clear evidence to the contrary; uses those judgments to

restrain consumers' bank accounts or garnish their wages; and opposes consumers' orders to show cause to vacate judgments and/or motions to dismiss without grounds to do so.

168.    Upon information and belief, Selip makes broad use of legal process in the collection of putative debts without engaging in meaningful review, thereby making false representations to consumers and the courts.

169.    Upon information and belief, Selip engages in a broad pattern and practice of deceitful conduct by prolonging litigation it knows to be baseless.

170.    According to New York State's online E-court records, Midland filed over 20,800 debt collection lawsuits in New York State in 2021 alone.  Upon information and belief, Midland regularly files debt collection lawsuits throughout the United States.

171.    Upon information and belief, in addition to filing lawsuits, Midland regularly engages in other debt collection activity, including mailing debt collection letters to consumers.

172.    Indeed, according to the Consumer Financial Protection Bureau (CFPB), Midland, together with Midland's parent company and its other subsidiaries, comprise the largest debt collector and debt buyer in the United States.[1]

173.    The high volume of debt collection activity of Midland in itself suggests that Midland has a broad pattern and practice of collecting debts without adequately verifying that the debts are owed by the consumers.

174.    Midland has been sued repeatedly for violations of the FDCPA in New York and throughout the United States.

---

[1] https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-settles-lawsuit-debt-collectors-and-debt-buyers-encore-capital-group-midland-funding-midland-credit-management-and-asset-acceptance-capital-corp/

175.    The CFPB sued Midland, along with Midland's parent company and its other subsidiaries, in 2020 for violations of the FDCPA, alleging that Midland sued consumers without possession of required documentation and used law firms to engage in collection efforts without providing required disclosures.[2]

**FIRST CAUSE OF ACTION**
**Violation of the FDCPA, 15 U.S.C. §§ 1629e 1692f**
*Against All Defendants*

176.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

177.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

178.    Defendants violated the FDCPA, §§ 1692e, 1692f, by using false, deceptive, and misleading representations and means and by engaging in unfair and unconscionable practices in connection with the collection of the alleged debt from Plaintiff Johann Cutti.

179.    Defendants' violations include, but are not limited to:

a.    Enforcing a judgment against Plaintiff Johann Cutti that was entered against an individual with a different name;

b.    Causing an income execution to be served on Plaintiff's employer and garnishing Plaintiff's wages for a debt Defendants have acknowledged he did not owe, and without prior notice to Plaintiff;

---

[2] *Id.*

c.  In bad faith, unduly prolonging legal proceedings by opposing Plaintiff's motion to vacate the default judgment after receiving proof that the judgment was not valid, continuing to present the false affidavit of service as valid, requesting an adjournment to conduct an unnecessary investigation, and filing a motion to seek vacatur of the judgment on grounds other than lack of personal jurisdiction after Plaintiff's order to show cause to vacate due to improper service had already been submitted to the Court;

d.  Failing to investigate and/or stop the garnishment after receiving notice that the debt was not owed by Plaintiff; and

e.  Delaying refunding the garnished funds to Plaintiff for almost three months after Defendants acknowledged the account was fraudulent and that Plaintiff did not owe the debt;

f.  Failing to conduct a reasonable investigation to ensure it was serving the Complaint on the proper party, at the correct address;

g.  Failing to conduct a reasonable investigation to ensure it was sending debt collection notices to the proper party at the correct address.

180.  Defendants' violations caused Plaintiff Johann Cutti economic injuries including but not limited to the garnishment of his wages for seven months; out of pocket expenses for serving and mailing court papers; postage for the mailing of his verification request to Selip; loss of time related to phone calls made to Selip; travel to an attorney's office for assistance filing an order to show cause; and attending court dates, including loss of leave days used for court appearances.

181.  Defendants' violations also caused Plaintiff Johann Cutti emotional distress.

182.    These are concrete and particularized injuries that have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

183.    They are analogous to common law claims like malicious civil prosecution, abuse of process, defamation, and other wrongful litigation torts.

184.    As a result of the above FDCPA violations, Defendants are liable to Plaintiff for statutory damages in an amount to be determined at the time of trial, but not less than $1,000 per violation; actual damages, including emotional distress; reasonable attorney's fees; and costs.

## SECOND CAUSE OF ACTION
Violation of N.Y. Gen. Bus. L. § 349
*Against All Defendants*

185.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

186.    Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses, including, but not limited to making false representations in court filings to obtain a default judgment; representing to Plaintiff that he owed the debt when he did not; and continuing to collect on the debt after they had notice that it did not belong to Plaintiff. These acts were done by Defendants systematically, and, as such, have had a broad impact on consumers at large.

187.    Defendants committed the above described acts willfully and/or knowingly.

188.    Defendants' deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

189.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

190.    As a direct and proximate result of their violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm, including emotional distress.

191.    Plaintiff is entitled to preliminary and permanent injunctive relief barring Defendants from engaging in such deceptive acts and practices, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

### THIRD CAUSE OF ACTION
Violations of Judiciary Law 487
*Against Defendant Selip & Stylianou, LLP*

192.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

193.    Selip engaged in egregious conduct which violated N.Y. Jud. Law § 487 by, *inter alia*, enforcing a judgment against Plaintiff and causing Plaintiff's wages to be garnished where Plaintiff was not the judgment debtor, and filing legal papers to oppose and delay Plaintiff's motion to vacate the default judgment despite clear evidence that Plaintiff did not owe the putative debt and was never served

194.    Selip's conduct was deceitful and calculated to delay the civil court action for its own benefit.

**195.**    Selip's conduct caused Plaintiff economic injury as well as emotional distress.

### FOURTH CAUSE OF ACTION
Negligence *Per Se*
*Against all Defendants*

196.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

197.    In New York State, a "violation of a state statute that imposes a specific duty constitutes negligence *per se*, or may even create absolute liability." *Elliott v. City of New York*, 95 N.Y.2d 730, 747 N.E.2d 760, 724 N.Y.S.2d 397 (2001).

198.    Defendants had a duty of care to Plaintiff under the FDCPA and GBL §§ 349 and 601.

199.    Defendants breached the duty of care imposed upon them by violating the FDCPA as set forth above in paragraph 178.

200.    Defendants breached the duty of care imposed upon them by violating GBL § 349 as set forth above in paragraphs 185-187.

201.    Defendants' breached their duty of care under GBL §601 by, *inter* alia, garnishing Plaintiff's wages pursuant to a judgment entered against someone with a different name, by enforcing the judgment through an income execution after it had clear evidence that the judgment had been obtained through improper service; and opposing the vacatur of the judgment even after Plaintiff provided proof of his name and that he did not live at the address the Complaint was served on.

202.    Defendants' conduct caused Plaintiff economic harm and emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

    a.    A declaration that Defendants committed the violations of law alleged herein;

    b.    An order enjoining Defendants from committing similar actions in the future;

    c.    An award of actual, compensatory, and statutory damages;

    d.    An award of treble damages;

    e.    An award of exemplary and punitive damages;

f.   An award of costs and reasonable attorney's fees;

g.   An award of pre-judgment and post-judgment interest as allowed by law; and

h.   All other relief, in law and in equity, both special and general, to which Plaintiff

may be justly entitled.

### **DEMAND FOR A JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: July 11, 2024

Respectfully submitted,

***s/ Mary McCune, Esq.***

MANHATTAN LEGAL SERVICES
By:    Mary McCune, Esq. (MM3298)
          Caitlin Goldman, Esq. (CJ2198)
1 West 125th St., 2nd Floor
New York, NY 10027
Phone/Fax: (646) 442-3143
mmccune@lsnyc.org
cgoldman@lsnyc.org

*Attorneys for Plaintiff Johann Cutti*